IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Craig Singleton, ) | C/A No. 0:14-3802-DCN-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, David Craig Singleton, brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

## SOCIAL SECURITY DISABILITY GENERALLY

    Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v.

Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In November 2009, Singleton applied for SSI, alleging disability beginning June 2, 2004. Singleton's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 8, 2011 at which Singleton, who was represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on September 15, 2011 denying benefits and concluding that Singleton was not disabled. (Tr. 11-21.) The Appeals Council denied Singleton's request for review on April 10, 2012, and Singleton filed a Complaint in the United States District Court. On June 6, 2013, the Honorable Cameron McGowan Currie, United States District Judge, issued an order remanding the matter to the Commissioner for further proceedings. (Tr. 367-71.)

A second hearing was held on May 8, 2014, at which Singleton appeared and testified. Singleton continued to be represented by Beatrice Whitten, Esquire. The ALJ issued a decision on July 24, 2014 again finding that Singleton was not disabled. (Tr. 303-17.)

Singleton was born in 1960 and was forty-nine years old on the date his application was filed. (Tr. 137.) He has a ninth-grade education and past relevant work experience as a construction worker. (Tr. 127.) Singleton alleged disability due to a severely damaged left hand due to a fractured finger. (Tr. 140.)

In applying the five-step sequential process, the ALJ found that Singleton had not engaged in substantial gainful activity since November 10, 2009—the date his application was filed. The ALJ also determined that Singleton's degenerative disc disease, left upper extremity laceration, depression, and history of a closed head injury were severe impairments. However, the ALJ found that Singleton did not have an impairment or combination of impairments that met or medically



equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Singleton retained the residual functional capacity to

> perform light work[] as defined in 20 CFR 416.967(b) except that he can occasionally kneel, crouch, and crawl. He is unable to climb ladders. The claimant, who is left hand dominant, is limited to occasional handling and fingering with his left upper extremity. He is unable to perform production-based work.

(Tr. 309.) The ALJ found that Singleton had no past relevant work, but that, considering Singleton's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Singleton could perform. Therefore, the ALJ found that Singleton had not been under a disability since November 10, 2009—the date the application was filed.

Thereafter, Singleton appealed the ALJ's decision to the district court.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,



make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Singleton raises the following issues for this judicial review:

I.      The ALJ performed an incomplete Listing analysis; and

II.     The ALJ performed an incomplete RFC analysis; and

III.    Mr. Singleton requests reversal and an award of benefits in lieu of remand.

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

**A.      Listing 12.05**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 416.926(a).



Singleton argues that the ALJ erred in finding that he did not meet Listing 12.05 for Intellectual Disability. That Listing provides, in pertinent part:

> 12.05 Intellectual Disability:[2] Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.

The United States Court of Appeals for the Fourth Circuit has made clear that in determining whether a claimant meets Listing 12.05, the ALJ must first find that the claimant satisfies the introductory paragraph to the Listing by finding that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D. Here,

---

[2] The court notes that effective September 3, 2013—which falls between the date of the ALJ's first decision that was remanded for further consideration and the date of the decision at issue in the instant case—the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05. See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013). However, the substance of the Listing did not change.



Requirement B is at issue, requiring an IQ score of 59 or less. Also, as in Hancock, Singleton raises arguments with regard to Requirement C, requiring an IQ score of 60-70, which the Fourth Circuit describes as Prong 2, as well as requiring a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as Prong 3. Id.

In addressing the aspects of Listing 12.05 at issue here, the ALJ first observed that this Listing is "characterized by significantly subaverage general intellectual functioning *with deficits in adaptive functioning*." (Tr. 307) (emphasis in original). The ALJ further related as follows:

> [A]lthough the claimant's Full Scale IQ measured 57 (Exhibit 19F) and while the test administrator considered the results valid, they are inconsistent with his history of adaptive functioning. Furthermore, the psychological consultant concluded that, the pattern of the claimant's test scores considered in the context of his history suggested probable borderline intellectual functioning (Exhibit 19F)[.] Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. This is determined by his success in 11 areas: communication, self-care, home living, social/ interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. To satisfy a diagnosis of intellectual disability, an individual must have deficits in at least two of these areas.

(Tr. 307-08) (footnotes omitted). The ALJ proceeded to individually address each of the eleven areas listed above and ultimately found that "[w]hile the claimant's IQ scores[] revealed sub-average general intellectual functioning, he does not have deficits in adaptive functioning." (Tr. 309.)

As an initial matter, the parties disagree as to the basis of the ALJ's finding that Singleton did not meet Listing 12.05. Singleton argues that the ALJ improperly rejected his IQ scores and that his analysis of Singleton's adaptive functioning is unsupported by substantial evidence. The Commissioner argues that the ALJ did not outright reject Singleton's IQ scores; rather, the ALJ illustrated the inconsistency between the scores and Singleton's lack of deficits in adaptive



functioning. The Commissioner further argues that the ALJ properly evaluated Singleton's adaptive functioning and that substantial evidence supports the ALJ's finding that Singleton did not have deficits in adaptive functioning. Regardless of whether the ALJ rejected the IQ scores or noted an inconsistency, for the reasons that follow Singleton has failed to demonstrate that the ALJ erred in evaluating Singleton's adaptive functioning, and therefore, remand is not warranted on this ground.

Cases interpreting Listing 12.05 show that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. Accord Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012). However, the Fourth Circuit has provided instruction on the factors that play into this determination, finding that deficits in adaptive functioning "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002)). Further, a low IQ score alone does not demonstrate deficits in adaptive functioning. Justice v. Barnhart, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006).

As stated above, the ALJ addressed each of the eleven areas suggested in Jackson, and Singleton appears to challenge the ALJ's analysis with regard to seven of them: communication, self-care, home living, social skills, functional academic skills, work, and leisure. The ALJ's decision reflects the following findings in these areas:

> Communication is the ability to convey information from one person to another. The claimant was able to complete his neuropsychological examination without difficulty. While the claimant reportedly received assistance from his sister to read his mail, there is no evidence to support a finding that the claimant has difficulty with

> communication. Additionally, the claimant was able to articulate effectively at the hearing. The claimant reported that he could read some (Exhibit 5A).
>
> Self-care and home living are two areas that are closely linked. The individual's ability to navigate through everyday situations involving grooming, feeding, and independent living skills, hinge on self-care and home living skills. The claimant is able to take his medications independently and care for his own hygiene (Exhibits 5A, 19F).
>
> Social skills involve the individual's ability to interact with others. This intricate function requires the ability to process figurative language and read unspoken cues such as body language. The claimant reported having a close relationship with his daughters. He described himself as having a negative attitude and as having a tendency to be angry towards others. The consultative clinical psychologist, described the claimant as having basic and coarse social graces. He has a history of incarceration (Exhibits 5A, 19F).
>
> . . . .
>
> Functional academic skills involve the individual's ability to apply academic skills to everyday situations. The record shows that the claimant has a 9th grade education, and that he has not obtained his GED. He alleges having been in special education; however, there is no objective evidence in the record to support this claim. On the Disability Report –Adult form SSA 3368, the claimant reported that he completed the 9th grade, and that he was not in special education classes (Exhibits 5A, 3E/5). On the WRAT-4, the claimant achieved a 2.3 grade equivalent in Word Reading, and a 3rd grade equivalent in Math Computation. The claimant's past relevant work was performed at the semi-skilled level. He also had a driver's license, before losing it secondary to unpaid tickets (Exhibits 5A, 19F). The claimant's daughter testified that the claimant is able to use the postal system.
>
> Work involves the individual's ability to maintain gainful employment. This involves rather complex social and cognitive functioning and skills. Moreover, the claimant was also able to obtain his driver's license (Exhibit 5A, 19F).
>
> Leisure is an important aspect of the quality of life. The claimant reported having a close relationship with his daughters. He lives with family members. He reported that he spends time watching television, sitting in his yard, walking to the store, smoking 1 pack of cigarettes a day and drinking beer on weekends (Exhibits 5A, 19F, 20F).

(Tr. 308-09) (footnote omitted).

Although the ALJ specifically discussed the factors, in challenging the ALJ's determination, Singleton points to selective other evidence that he contends supports the existence of deficits. He also argues that the ALJ appears to have acknowledged some deficits in some of the areas sufficient to satisfy the Prong 1 requirements, and argues that the Listing does not quantify the required level of deficit in functioning. Considering the application of the above factors to the record presented, the court finds that Singleton has failed to show that the ALJ's conclusion that Singleton did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law.

Specifically, Singleton argues that facts observed by the ALJ that Singleton needs assistance reading the mail and can "read some," as well as notes from Singleton's neuropsychological examination that Singleton was withdrawn, hesitant, mildly avoidant, answered questions in a "generally adequate fashion," had social graces that "appeared very basic and coarse," had mild constriction in prosody, and mild articulation and fluency difficulties all support a finding of difficulty in communication. (Pl.'s Br. at 15-16, ECF No. 14 at 15-16) (citing Tr. 308, 292, 293). Alleging that the ALJ ignored evidence that Singleton did not cook for himself; did not do many chores; rarely did yard work, went shopping, or cared for children; and citing Singleton's report to Dr. Mark Williams[3] that he rarely left the house, Singleton appears to argue that the ALJ erred in failing to find limitations in self-care and home living. With regard to social skills, functional academic skills, and leisure, Singleton argues that the ALJ's factual discussions in these areas either do not support the ALJ's finding that Singleton did not have deficits in these areas or actually

---

[3] The court notes that Dr. Williams conducted the neuropsychological examination referenced by the ALJ.



support a finding of poor functioning in these areas. Additionally, Singleton argues that the ALJ failed to acknowledge that Singleton required great assistance to pursue his disability application in addressing the area of functional academic skills. Singleton argues that his ability to obtain a driver's license has nothing to do with the area of work and that Singleton has not successfully worked on a regular basis throughout his life.

In this case, the ALJ considered pertinent evidence and weighed appropriate factors in analyzing whether Singleton met Listing 12.05.[4] The fact that Singleton can point to other evidence that supports his position does not render the ALJ's decision unsupported. See Hancock, 667 F.3d at 476. In particular, in this case, it is clear that the ALJ was aware of much of the additional information that Singleton argues in support of his position that the ALJ misrepresented the evidence in the section discussing Listing 12.05. Furthermore, to the extent that Singleton is challenging the weight the ALJ gave to much of the evidence in this case, courts are "not at liberty to 'reweigh conflicting evidence . . . or substitute our judgment for that of the [ALJ].' " Hancock, 667 F.3d at

---

[4] To the extent Singleton argues that the ALJ's findings that Singleton had moderate difficulties in concentration, persistence, and pace and in social functioning indicate that Sims had difficulties in adaptive functioning, the court finds that the ALJ's findings in the broad functional areas of mild or moderate restrictions do not render the ALJ's finding that Singleton did not exhibit deficits in adaptive functioning unsupported by substantial evidence. Compare 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.05(D) with § 12.05(B) & (C); see, e.g., Hinkle v. Comm'r of Soc. Sec., No. 3:14-CV-41, 2015 WL 2170034, at *6 (N.D. W. Va. May 8, 2015) (stating that the ALJ's conclusions that the plaintiff's mental impairments imposed a mild restriction on her daily living and moderate difficulties with social functioning are consistent with his review and determination that the plaintiff failed to make the requisite showing of deficits in adaptive functioning); but see Harris v. Colvin, No. 2:13-28109, 2015 WL 268246, at *15 (S.D. W. Va. Jan. 20, 2015) (stating that "a finding of moderate deficits in adaptive functioning in the paragraph D criteria would arguably satisfy the diagnostic description"). Further, unlike in Whites v. Colvin, No. 8:13-cv-00396-DCN, 2014 WL 4668656 (D.S.C. Sept. 16, 2014), where the court observed that a diagnosis of mental retardation by a qualified physician includes a finding that an individual suffers from deficits in adaptive functioning in at least two areas, no such diagnosis exists in this case.



476 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*) and citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence.")). In this case, although Singleton strongly argues that the evidence suggests that Singleton demonstrates the requisite deficits in adaptive functioning, the court cannot say that the ALJ's decision was not supported by substantial evidence of was controlled by error or law. Therefore, remand is not warranted on this ground.

**B.     Residual Functional Capacity Analysis**

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

This matter was previously remanded for the Commissioner to further evaluate the impact of Singleton's mental limitations on his RFC, as the court was unable to determine from the ALJ's analysis whether it was supported by substantial evidence. See Singleton v. Colvin, C/A No. 0:12-1276-CMC (D.S.C. June 3, 2013). Singelton argues that, on remand, the ALJ failed to address one of the bases identified in the court's order instructing the Commissioner to reevaluate the claimant's RFC. Specifically, Singleton argues that, notwithstanding the court's previous order, the ALJ's decision on remand fails to add any further analysis of the impact of Singleton's mental limitations on his RFC. Singleton also argues that the ALJ failed to explain how Singleton's depression and



closed head injury impacted his RFC.  Singleton further argues that "the ALJ failed to explain why he found Mr. Singleton was capable of reliably using his left hand given evidence to the contrary" and failed to identify evidence that Singleton remained capable of walking and standing for eight hours per day.  (Pl.'s Br. at 18, ECF No. 14 at 18.)  Singleton contends that his daily activities that the ALJ relied upon do not demonstrate a capacity for activity beyond sedentary work.

As stated above, the ALJ found that Singleton retained the RFC to "perform light work[] as defined in 20 CFR 416.967(b) except that he can occasionally kneel, crouch, and crawl.  He is unable to climb ladders.  The claimant, who is left hand dominant, is limited to occasional handling and fingering with his left upper extremity.  He is unable to perform production-based work." (Tr. 309.) The court agrees with Singleton's argument that notwithstanding the court's previous order, the ALJ's decision on remand fails to add any further analysis of the impact of Singleton's mental limitations on his RFC.[5]  The court finds further support for Singleton's position in the introduction of the ALJ's decision, as the ALJ appears only to have recognized that this matter was remanded to "[e]xplain whether [the claimant] meets Listing 12.05." (Tr. 303.)  The ALJ appears to have overlooked the court's and the Appeals Council's direction that the RFC analysis also required further consideration.[6]  Thus, the court is constrained to recommend remanding this matter for the ALJ to address the impact of Singleton's mental limitations on his RFC.

---

[5] Although the court finds that Singleton's remaining arguments regarding the RFC, standing alone, would not warrant a recommendation of remand by the court for further consideration by the Commissioner, if necessary, Singleton may present these arguments on remand.

[6] The court notes that the Order from the Appeals Council did not list any specific issues for the ALJ to address; rather, it references the district court's order.  (Tr. 385.)



On remand, the ALJ's attention should also be directed to the recent decision by the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit held that remand was warranted, in part, because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the claimant's ability to maintain concentration, persistence, or pace at Step Three. Mascio, 780 F.3d at 638. The Fourth Circuit stated that it "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). However, the Court continued,

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (citation omitted).

Although Singleton requests that this matter be remanded for an award of benefits, the court finds that Singleton's entitlement to benefits is not wholly established. See Crider v. Harris, 624 F.2d 15 (4th Cir. 1980) (finding remand for an award of benefits was warranted where the individual's entitlement to benefits was "wholly established" on the state of the record). The court is cognizant that this matter has previously been remanded for further consideration; however, this matter must be remanded for further consideration of the evidence of Singleton's mental limitations



and assessment of this evidence by the ALJ in the first instance. See Smith v. Astrue, No. 3:10-66-HMH-JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) ("Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (citing Edwards v. Bowen, 672 F. Supp. 230, 237 (E.D.N.C. 1987)); cf. Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A.").

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

October 26, 2015                                     Paige J. Gossett
Columbia, South Carolina                      UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).